IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALEA LONDON and ATRIUM UNDERWRITERS LIMITED, | CIVIL ACTION NO. 3:09-CV-2256 |
| Plaintiffs, | |
| v. | (JUDGE CAPUTO) |
| PA CHILDCARE, LLC, ROBERT J. POWELL, and GREGORY ZAPPALA, | |
| Defendants. | |

## MEMORANDUM

Presently before the Court are Plaintiff Alea London's Motion for Summary Judgment, Plaintiff Atrium Underwriters Limited's Motion for Summary Judgment, and the Cross-Motion for Summary Judgment by Defendants PA Child Care, LLC ("PACC") and Gregory Zappala. Because Alea and Atrium have no duty to defend or indemnify the Defendants, their motions will be granted and the Defendants' motion will be denied.

### I. Background

Plaintiffs Alea London and Atrium Underwriters Limited are insurance companies seeking declarations that they have no obligation to defend or indemnify any of the Defendants in several underlying lawsuits.

**A.   The Underlying Suits**

Defendants have been sued in several different actions filed in the Middle District of Pennsylvania that have been consolidated as *Wallace v. Powell*, No. 3:09-cv-0286. This opinion only outlines the facts necessary to address the instant motions for summary judgment; a more extensive factual background can be found in *Wallace v. Powell*, No.

3:09-cv-0286, 2009 WL 4051974 (M.D. Pa. Nov. 20, 2009). There are two complaints in the underlying suit: the Master Individual Complaint ("MIC") and the Master Class Action Complaint ("MCAC").

The MIC contains the following allegations: Defendants PACC and WPACC are corporations that own and operate juvenile detention facilities (MIC, ¶¶ 8-9); Defendant MAYS also operated the PACC and WPACC facilities by virtue of a contractual agreement (*id.* ¶ 19). Defendants Robert Powell and Gregory Zappala are "owner[s], officer[s], shareholder[s], and operator[s]" of the three Defendant Corporations (*id.* ¶¶ 5, 12). All Defendants were part of a conspiracy to defraud the juveniles of the Commonwealth of Pennsylvania and deprive them of their rights (*id.* ¶ 29). As part of this conspiracy, the Defendants made payments of more than $2.6 million to two judges of the Court of Common Pleas for Luzerne County in exchange for those judges facilitating the construction and expansion of the PACC and WPACC juvenile detention centers and then ensuring that juveniles were placed at those facilities (*id.* ¶¶ 30-32). The Defendants then employed several schemes in order to hide their payments to the judges (*id.* ¶ 33). The MIC charges all Defendants with Violation of the RICO Act (Count I), Conspiracy to Violate the RICO Act (Count II), Deprivation of Substantive and Procedural Due Process pursuant to 42 U.S.C. § 1983 (Count III), Deprivation of Rights Pursuant to 42 U.S.C. § 1983 (Count IV), Deprivation of Substantive Due Process pursuant to 42 U.S.C. § 1983 (Count V), Civil Conspiracy (Count VIII), and False Imprisonment (Count IX).

The MCAC alleges that Mr. Powell and Mr. Zappala were owners of the Defendant Corporations (MCAC, ¶¶ 4, 11). The factual allegations that make up the MCAC are, for the purposes of this Motion, very similar to those in the MIC. The claims against the Defendants

in the MCAC are Conspiracy to Violate Plaintiffs' Right to an Impartial Tribunal Guaranteed by the Fifth, Sixth, and Fourteenth Amendments, pursuant to 42 U.S.C. § 1983 (Count II), Conspiracy to Deprive Youth of Their Right to Counsel an/or Knowing, Intelligent, and Voluntary Guilty Plea in violation of the Fifth, Sixth and Fourteenth Amendments, pursuant to 42 U.S.C. § 1983 (Count IV), Civil RICO Act violations pursuant to 18 U.S.C. § 1962(c) (Count V), Civil RICO Act violations pursuant to 18 U.S.C. § 1962(b) (Count VI), Civil RICO Act violations pursuant to 18 U.S.C. § 1962(d) (Count VII), and Wrongful Imprisonment (Count IX).

**B. The Policies**

Alea issued three comprehensive general liability policies to PACC (Policies 0137, 1165, and 1866), covering the period of 2003 through 2006. Atrium issued four comprehensive general liability policies to PACC, covering the period of 2006 through 2010. Mr. Powell and Mr. Zappala both qualified as insureds under each of the policies. The policies all contain two insurance coverages: Coverage A and Coverage B.

Coverage A extends coverage to claims for "bodily injury." It applies only if the "bodily injury" or "wrongful act(s)" are the result of an "occurrence." "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Coverage A contains an exclusion for bodily injury that is either "expected or intended" from the standpoint of the insured.

Coverage B protects against personal injury and advertising liability. The policy defines "personal injury" to mean, among other things, "false arrest, detention, or imprisonment." Alea Policies 0137 and 1165 contain an exclusion for personal or advertising

3

injury "arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured." The Atrium Policies and Alea Policy 1866 preclude personal injury "caused by or at the direction of the Insured with the knowledge that the action would violate the rights of another and would inflict personal and advertising injury."

### C.     Procedural History

In the spring of 2009, Defendants tendered the defense of the underlying actions to Alea and Atrium for insurance coverage. In June and July of 2009, both Plaintiff companies denied coverage to the Defendants.

Plaintiffs filed their declaratory judgment action on November 17, 2009. PACC and Mr. Zapalla moved to dismiss on February 7, 2010. On April 14, 2010, their motion was granted as to Alea's claims under Policies 0137 and 1165 and denied in all other regards. Upon a motion for reconsideration, on March 31, 2011, the April 14 order was vacated in part to the extent it dismissed Alea's claims.

On July 15, 2011, Alea filed its motion for summary judgment. PACC and Mr. Zappala filed a cross-motion for summary judgment on August 2, 2011. Atrium then filed its motion for summary judgment on October 19, 2011. The motions have been fully briefed and are ripe for consideration.

## II. Legal Standard

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). A fact is material if proof of its existence or nonexistence might affect the outcome of the

suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2). Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one. *Anderson*, 477 U.S. at 248. An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id.* Once the moving party has satisfied its initial burden, the burden shifts to the non-moving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. *Id.* at 256–57.

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party. *White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988). The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). In deciding a motion for summary judgment, the judge's function is not to make credibility determinations, weigh evidence, or draw inferences from the facts. *Anderson*, 477 U.S. at 249. Rather, the judge must simply "determine whether there is a genuine issue for trial." *Id.*

### III. Discussion

The interpretation of an insurance contract is a question of law for the court to decide. *Reliance Ins. Co. v. Moessner*, 121 F.3d 895, 900 (3d Cir.1997) (citation omitted).

The insured has the initial burden of establishing coverage under the policy. *Butterfield v. Giuntoli*, 670 A.2d 646, 651 (Pa. Super. 1995). A court must give effect to the plain language of the insurance contract read in its entirety. *Reliance*, 121 F.3d at 901. On the other hand, when the insurer relies on a policy exclusion as the basis for denying coverage, it bears the burden of proving that the exclusion applies. *Mistick, Inc. v. Nw. Nat'l Cas. Co.*, 806 A.2d 39, 42 (Pa. Super.2002). Policy exclusions are strictly construed against the insurer. *Selko v. Home Ins. Co.*, 139 F.3d 146, 152 n. 3 (3d Cir.1998) (citing *Standard Venetian Blind Co. v. Amer. Empire Ins. Co.*, 469 A.2d 563, 566 (Pa. 1983)).

In determining whether an insurer has a duty to defend and indemnify, a court must examine only the allegations in the complaint in the underlying litigation; it is error to look elsewhere. *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 908 A.3d 888, 896 (Pa. 2006); *see also Coregis Ins. Co. v. Harrisburg*, No. 1:03-CV-920, 2006 WL 860710, at *4 (M.D. Pa. Mar.30, 2006) ("Under Pennsylvania law, the question of whether an insurance company has a duty to defend is determined by comparing the allegations contained *within the four corners of the underlying complaint* against the terms and conditions of the insurance policy at issue.") (emphasis added). When examining the underlying complaint's allegations, the court must "resolve all doubts as to coverage in favor of the insured." *Westport Ins. Corp. v. Black, Davis & Shue Agency, Inc.*, No. 1:05-CV-1252, 2007 WL 1576412, at *4 (M.D. Pa. May 30, 2007). Here, Defendants attempt to support their arguments by addressing facts outside the underlying complaints, but this outside information will not be considered.

Under Pennsylvania law, an insurer's duty to defend is broader than its duty to indemnify, as the duty to defend arises whenever the allegations in the underlying complaint, taken as true and liberally construed in favor of the insured, state a claim to which the policy potentially applies. *Frog, Switch & Mfg. Co. v. Travelers Ins. Co.*, 193 F.3d 742, 746 (3d Cir.1999) (citing *Erie Ins. Exch. v. Transamerica Ins. Co.*, 533 A.2d 1363, 1368 (Pa. 1987)). "Furthermore, if a single claim in a multiclaim lawsuit is potentially covered, the insurer must defend all claims until there is no possibility that the underlying plaintiff could recover on a covered claim." *Id.* On the other hand, the duty to indemnify arises only if the damages the insured must pay are actually within the policy coverage. *Lucker Mfg. v. Home Ins. Co.*, 23 F.3d 808, 821 (3d Cir.1994). Thus, there may be a duty to defend without a duty to indemnify. *Frog, Switch & Mfg. Co.*, 193 F.3d at 746.

A. **Duty to Defend**

Plaintiffs' motions for summary judgment will be granted on the grounds that they have no duty to defend any of the Defendants in the underlying litigation under either Coverage A or Coverage B of the policies.

1. **Coverage A**

Coverage A of the policies does not create a duty to defend because it extends coverage only to "occurrences," and the allegations in the MIC and MCAC do not qualify as "occurrences." Under Coverage A, coverage is only triggered by an "occurrence," which is defined as an "accident." Under Pennsylvania law, the term "accident" within an insurance policy "refers to an unexpected and undesirable event occurring unintentionally." *Donegal Mut. Ins. Co. v. Bauhammers*, 938 A.2d 286, 292 (Pa. 2007) (citing *Kvaerner*, 908 A.2d at

7

898). Reckless, malicious, or purposeful conspiratorial activities are not "negligent" and cannot be considered "accidents" under the plain language of an occurrence-based insurance policy like the one at bar. *See Legion Indemnification Co. v. Carestate Ambulance Inc.*, 152 F.Supp.2d 707, 716-718 (E.D. Pa. 2001) (holding that reckless or grossly negligent action and civil conspiracy are not covered "occurrences" in policy that defines "occurrence" as an "accident"). Defendants argue that some of the language in the complaint suggests merely negligent conduct. But as I determined in the opinion denying the Defendants' motion to dismiss, "the underlying complaints contain only factual allegations of intentional, reckless, and wanton conduct, not of negligence or accidents." *See Alea London v. PA Child Care, LLC*, No. 09-2256, 2010 WL 1507103, at *5 (M.D. Pa. Apr. 14, 2010). Thus, the allegations in the underlying complaint are not covered under Coverage A of the policies.

2. **Coverage B**

Plaintiffs do not have a duty to defend under Coverage B of the policies because the allegations in the MIC and MCAC fall under the policies' exclusions.

**a. Alea Policies 0137 and 1165**

The allegations in the MIC and MCAC fall under the exclusion in Alea Policies 0137 and 1165 for personal injury "arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured." Pennsylvania courts have uniformly held that the phrase "arising out of" requires only "but for" causation, regardless of whether the phrase defines included coverage or policy exclusions. *See Essex Ins. Co. v. RMJC, Inc.*, 306 F. App'x 749, 752 (3d Cir. 2009) (citing *Forum Ins. Co. v. Allied Sec.*,

*Inc.*, 866 F.2d 80, 82 (3d Cir. 1989); *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 557 Pa. 595, 735 A.2d 100, 109–10 (1999)). In the opinion vacating dismissal of Alea's claims, I determined that the allegations in the MIC and MCAC arise out of all Defendants' alleged violation of penal statutes forbidding the giving or taking of compensation to public officials in an attempt to influence their decisions. *See Alea London v. PA Child Care, LLC*, No. 09-286, 2011 WL 1304872, at *4 (M.D. Pa. Mar. 31, 2011). Defendants argue that Mr. Powell and Mr. Zappala are not insureds under the policy, and therefore their actions cannot trigger the exclusion. Further, they argue that Mr. Powell and Mr. Zappala did not act as agents of PACC. However, the underlying complaints allege that both individual Defendants acted on behalf of PACC and that PACC itself participated in the bribery scheme. Therefore, coverage for the allegations in the underlying suit is excluded under Policies 0137 and 1165 of Coverage B.

### b. Atrium Policies and Alea Policy 1866

The allegations in the MIC and MCAC fall under the exclusion in the Atrium policies and in Alea Policy 1866 for personal injury "caused by or at the direction of the Insured with the knowledge that the action would violate the rights of another and would inflict personal and advertising injury." Defendants argue that they had no knowledge that their actions would violate the civil rights of others. Regardless of whether Defendants had actual knowledge, the MIC and MCAC allege that all Defendants knowingly violated the civil rights of others. For these reasons, the Atrium policies and Alea Policy 1866 do not create a duty to defend the underlying suit.

### E. Duty to Indemnify

Plaintiffs' motion for summary judgment will also be granted on the issue of indemnity. Because Plaintiffs have no duty to defend, they therefore has no duty to indemnify. *See Lucker Mfg. v. Home Ins. Co.*, 23 F.3d 808, 821 (3d Cir. 1994).

### IV. Conclusion

For the foregoing reasons, Plaintiffs' motions for summary judgment will be granted. Defendants' cross-motion for summary judgment will be denied. An appropriate order follows.

March 19, 2012  /s/ A. Richard Caputo
Date  A. Richard Caputo
  United States District Judge